## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **WILLIAM L. WALSH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.  CIV-10-410-M** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for disability insurance benefits. Pursuant to an order entered by Chief United States District Judge Vicki Miles-LaGrange, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).   The Commissioner has answered and filed the administrative record (hereinafter Tr. ____).  Both parties have briefed their respective positions, and thus, the matter is at issue.  For the reasons stated herein, it is recommended that the decision of the Commissioner be affirmed.

## I.  PROCEDURAL HISTORY

Plaintiff filed his application for disability insurance benefits on July 27, 2005, alleging that he became disabled as of March 28, 2005, due to post-traumatic stress disorder.

Tr. 64, 261-63.  The application was denied on initial consideration and on reconsideration at the administrative level.  Tr. 30, 31, 46-48, 51-54.  Pursuant to Plaintiff's request, a hearing was held before an administrative law judge on July 24, 2007.  Tr. 45, 407-36.  Plaintiff appeared in person with his attorney, and he offered testimony in support of his application. Tr. 409, 416-20, 426-30.  A medical expert and a vocational expert also testified at the request of the administrative law judge.  Tr. 38, 40, 420-25, 431-34.  The administrative law judge issued his decision on April 17, 2008, finding that Plaintiff was not disabled within the meaning of the Social Security Act and that he was thus not entitled to disability insurance benefits.  Tr. 218-20, 221-28.  The Appeals Council granted Plaintiff's request for review and remanded the case to another administrative law judge on October 27, 2008.  Tr. 231, 232-33.  The Appeals Council instructed the new administrative law judge to consider the disability rating assessed by the Veterans' Administration  (VA), to clarify the Plaintiff's residual functional capacity, and to obtain supplemental evidence from a medical expert and vocational expert if warranted by the expanded record.  Tr. 232-33.

The administrative law judge on remand conducted a second administrative hearing on June 23, 2009.  Tr. 385-406.  Plaintiff again appeared in person with his attorney and offered testimony in support of his application.  Tr. 387, 389-98, 403-05.  A medical expert also testified, and a vocational expert was present at the hearing but did not testify.  Tr. 387, 398-402.  The administrative law judge issued his decision on November 4, 2009, finding that Plaintiff was not disabled within the meaning of the Social Security Act and that he was not entitled to benefits.  Tr. 11-13, 14-27.  The Appeals Council denied Plaintiff's request

2

for review on March 5, 2010, and thus, the decision of the administrative law judge became the final decision of the Commissioner.  Tr. 7-9.

## II.  DECISION OF THE ADMINISTRATIVE LAW JUDGE

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. § 404.1520. Tr. 15-16.  He first found that Plaintiff had not engaged in substantial gainful activity since the onset date of March 28, 2005, through the last date insured, March 31, 2007.  Tr. 16.  At steps two and three, the administrative law judge found that Plaintiff suffered from post-traumatic stress disorder, depression, and degenerative changes in his cervical spine and found that these disorders were severe, but he also found that they were not severe enough to meet or equal one of the listed impairments or combination of impairments.  Tr. 16-21.  The administrative law judge next found that Plaintiff had the residual functional capacity (RFC) to perform a limited range of light work.  Tr. 21.  Specifically, the administrative law judge found that Plaintiff has the following nonexertional limitations: he can understand, remember, and carry out simple instructions and can work with routine supervision and interact for work purposes but he should not be required to deal with the general public.  Tr. 21.  The administrative law judge found at step four of the sequential evaluation process that Plaintiff could not perform his past relevant work.  Tr. 26.  However, the administrative law judge found at step five that there was other work Plaintiff could perform that exists in significant numbers in the national economy such as remnant sorter and hand bander.  Tr. 26-27.  Accordingly, the

administrative law judge found that Plaintiff was not disabled and was not entitled to disability insurance benefits.  Tr. 27.

## III.  STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review as follows:

> [W]e[1] independently determine whether the [administrative law judge's] decision is "free from legal error and supported by substantial evidence." Although we will "not reweigh the evidence or retry the case," we "meticulously examine the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met."
>
> "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance."  Our determination of whether the [administrative law judge's] ruling is supported by substantial evidence "must be based upon the record taken as a whole."  Consequently, we remain mindful that "[e]vidence is not substantial if it is overwhelmed by other evidence in the record."

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted).

To determine whether a claimant is disabled, the Commissioner employs a five-step sequential evaluation process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity."  If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment

---

[1]Although the Tenth Circuit Court of Appeals was discussing its own standard of review, the same standard applies to the federal district court's appellate review of social security cases. Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495, 1502 n. 1 (10th Cir. 1992) ("[A]s the second-tier appellate court, a circuit court does apply the same standard of review as the district court-the standard applicable to appellate review of individual social security cases.")

or impairments." An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. At step three, the [administrative law judge] considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." If a claimant's impairments are not equivalent to a listed impairment, the [administrative law judge] must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy.

Wall, 561 F.3d at 1052 (citations omitted). The claimant bears the burden to establish a prima facie case of disability at steps one through four. Williams v. Bowen, 844 F.2d 748, 751 & n.2 (10th Cir. 1988). If the claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy given the claimant's age, education, and work experience. Id. at 751.

## IV. DISCUSSION

### A. STEP THREE ANALYSIS

Plaintiff argues that the administrative law judge erred in failing to find that he met the requirements of Listing § 12.06. Plaintiff's Opening Brief, 13-16. Specifically, Plaintiff claims that the administrative law judge failed to adequately consider the opinions of Dr. Thomas N. Lynn, the medical expert who testified at the administrative hearing, and Dr. George Mount and Dr. Melanie Talley, two examining psychologists. Plaintiff's Opening Brief, 15. Plaintiff argues that the administrative law judge's step three finding is not supported by medical evidence but instead is no more than his impermissible lay opinion.

Plaintiff's Opening Brief, 15-16. Plaintiff also claims that the administrative law judge improperly relied on the opinions of Dr. T. Wade Toalson, Plaintiff's treating physician; Dr. Gail Poyner, an examining psychologist; and two non-examining state agency psychologists. Plaintiff's Reply, 2. The Commissioner responds that the administrative law judge's finding was adequately supported by the record as a whole. Commissioner's Response, 12-17.

"When a claimant's disability is equal to or more severe than an impairment in the Listing of Impairments, he is per se disabled." Knipe v. Heckler, 755 F.2d 141, 146 (10th Cir. 1985); 20 C.F.R. § 404.1520(a)(4)(iii). The determination at step three is strictly a medical determination. Ellison v. Sullivan, 929 F.2d 534, 536 (10th Cir. 1990) (citing 20 C.F.R. § 404.1526(b)); Baldwin v. Barnhart, No. 02-5117, 167 Fed. Appx. 49, 52 (10th Cir. Feb. 14, 2006).[2] To meet or equal a listing, the impairment must "meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Baldwin, 167 Fed. Appx. at 52 (internal alteration omitted) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). The claimant bears the "step three burden to present evidence establishing her impairments meet or equal listed impairments." Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005).

Paragraph (B) of Listing § 12.06 requires the claimant to show two of the following: marked restrictions in his activities of daily living; marked difficulties in maintaining his social functioning; marked difficulties in maintaining concentration, persistence, and pace;

_____

[2]This and any other unpublished dispositions are cited pursuant to Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

or repeated episodes of decompensation, each of extended duration. 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.06(B). The administrative law judge found that Plaintiff had mild restrictions in his activities of daily living. Tr. 20. In support, the administrative law judge pointed to Plaintiff's function report in which he reported that he shopped, drove locally, handled his finances, used a computer, attended to his personal hygiene and grooming, helped with household chores, read, and prepared simple meals. Tr. 20, 74-79. The administrative law judge also noted that Plaintiff lived with a friend and did not use a stove because he sometimes forgot to turn it off. Tr. 20.

The administrative law judge then found that Plaintiff had moderate difficulties in social functioning. Tr. 20. The administrative law judge noted that Plaintiff claimed that he was attacked at the VA Medical Center, that he was raped and beaten in the Army, that his ex-wife was raped by a business partner, and that he and his second wife separated because she was being stalked by a former husband. Tr. 20. The administrative law judge also stated that Plaintiff reported that he had friends as a child and as an adult; that he avoided family, neighbors, and authority figures; and that he handled stress and changes in routine poorly. Tr. 20.

The administrative law judge found Plaintiff had moderate difficulties regarding his concentration, persistence, and pace due to psychologically based distractions. Tr. 20. The administrative law judge noted that Plaintiff had impaired recent memory but intact immediate and long term memory. Tr. 20.

Finally, the administrative law judge found that Plaintiff had experienced one or two episodes of decompensation, each of extended duration, and noted that Plaintiff reported panic attacks and flashbacks that caused him to stop working. Tr. 20. Because the Plaintiff's impairments did not cause at least two "marked" limitations, the administrative law judge found that Plaintiff failed to meet the criteria of paragraph (B) of Listing § 12.06. Tr. 20.

The administrative law judge's findings essentially agree with the degree of functional limitation assessed by the state agency psychologists who noted that Plaintiff had moderate restrictions of daily activities; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and one or two episodes of decompensation. Tr. 147, 165.[3] To the extent Plaintiff is arguing that the administrative law judge should not have credited the evidence he did in favor of other evidence, that argument must fail. Plaintiff's Opening Brief, 15-16; Plaintiff's Reply, 2. Plaintiff is essentially asking the Court to reweigh the evidence, which the Court cannot do. Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007) ("To the extent that [the claimant] is asking this court to reweigh the evidence, we cannot do so. We review only the sufficiency of the evidence, not its weight . . . ." (citations omitted)). Accordingly, the undersigned finds that the administrative law judge's finding that Plaintiff did not meet paragraph (B) of Listing § 12.06 is supported by substantial evidence.

---

[3]The administrative law judge rated Plaintiff as having mild restrictions in his daily activities, but the state agency psychologists rated his restrictions in his daily activities as moderate. Tr. 20, 147.

### B. MEDICAL SOURCE OPINIONS

In his second argument on appeal, Plaintiff argues that the administrative law judge failed to give proper weight to the opinions of his treating, examining, and non-examining medical sources.

### 1. Treating Physician Opinion

Plaintiff argues that the administrative law judge erred in giving "great weight" to the opinion of Dr. T. Wade Toalson, Plaintiff's treating physician, because Dr. Toalson's statements that Plaintiff was "doing well" say nothing about his ability to function mentally in a work environment. Plaintiff's Opening Brief, 16-17. Plaintiff also argues that it was improper for the administrative law judge to credit Dr. Toalson's opinion because Dr. Toalson never offered an opinion regarding Plaintiff's ability to work. Plaintiff's Opening Brief, 17. The Commissioner responds that the administrative law judge properly relied on Dr. Toalson's treatment notes in finding that Plaintiff was not disabled. Commissioner's Response, 18-19.

Treating source medical opinions are entitled to deference and must be either given controlling weight or assigned some lesser weight "using all of the factors provided in 20 C.F.R. [§] 404.1527." Social Security Ruling 96-2p, 1996 WL 374188, at *4. To ensure that the opinion of a treating physician receives proper deference, an administrative law judge must engage in a sequential analysis when performing his review of such opinions. See Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).

The first step requires the administrative law judge to determine whether the opinion deserves controlling weight. Watkins, 350 F.3d at 1300. Controlling weight should be given if the opinion is both well supported by medically acceptable clinical laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); Watkins, 350 F.3d at 1300.

Here, the administrative law judge gave "great weight" to the opinion of Dr. Toalson. Tr. 24. In support, the administrative law judge noted that Dr. Toalson regularly treated Plaintiff from April 2005 and had a longitudinal view of Plaintiff's condition. Tr. 24. He also noted that Dr. Toalson's contemporaneous treatment notes did not show any significant deterioration in Plaintiff but instead, the doctor reported that Plaintiff was doing and looking well and was in no acute distress. Tr. 24. The administrative law judge also noted that Plaintiff chose to treat his anxiety and post-traumatic stress disorder with Dr. Toalson, a family physician, rather than seek treatment with a psychiatrist available to him through the VA Medical Center. Tr. 24. The administrative law judge then found that Dr. Toalson was qualified to manage Plaintiff's psychiatric symptoms and that Dr. Toalson's opinion was entitled to greater weight than Plaintiff's one-time examiners Dr. George Mount and Dr. Melanie Talley. Tr. 24.

Dr. Toalson's medical records support the administrative law judge's finding, and the administrative law judge discussed these findings in his decision. Plaintiff began treatment with Dr. Toalson in April 2005, and at that time, he reported that he had been diagnosed with post-traumatic stress disorder and that he experienced panic attacks when not taking Valium

but that he did not experience panic attacks when taking Valium regularly.  Tr. 17, 169. Plaintiff also reported that Valium did not interfere with his ability to work, that he did not experience any side effects from Valium, that he had tried other antidepressants such as Zoloft and Paxil, and that he was not under any long term psychiatric care.  Tr. 17, 169.  Dr. Toalson noted that Plaintiff looked well, was in no acute distress, and was alert and oriented with good insight and appropriate mood and no overt depression.  Tr. 17, 169.  Dr. Toalson also noted that his sole function would be to prescribe Plaintiff Valium because the VA Medical Center does not prescribe Valium and that Plaintiff would obtain his other health care through the VA Medical Center.  Tr. 17, 169.  Dr. Toalson next saw Plaintiff in September 2005, and Plaintiff stated that he was responding well to the Valium, that it was the only medication that worked for him, and that he was able to function on Valium.  Tr. 17, 168.

Plaintiff's next visit was in January 2006, and he reported that Valium was working well for him but that it does wear off at night causing him nightmares.  Tr. 18, 167.  Because Plaintiff was responding well to Valium, Dr. Toalson decided to continue it.  Tr. 18, 167. Plaintiff returned in June 2006 and reported doing well with Valium though he was experiencing some insomnia related to nightmares and nocturia.  Tr. 18, 166.  Plaintiff also reported that he was no longer receiving medical treatment from the VA Medical Center, that he was not under any type of psychiatric care, and that he wished to receive all his medical care through Dr. Toalson.  Tr. 18, 166.  Plaintiff's next visit was in April 2007 at which time he reported that he was doing well on Valium and that he had returned to VA

Medical Center for treatment of his other conditions. Tr. 18, 177. Dr. Toalson noted that Plaintiff appeared to be stable overall on Valium. Tr. 18, 177.

Plaintiff returned to Dr. Toalson in July 2007, asking that he be prescribed pain medication for his neck pain but he did not want Dr. Toalson to fully evaluate his condition. Tr. 18, 304. Dr. Toalson refused to prescribe pain medication to Plaintiff because he was not treating Plaintiff's physical condition but he did state that he was comfortable with continuing to prescribe Plaintiff Valium. Tr. 18, 304. Plaintiff saw Dr. Toalson again in January 2008 for, among other things, a refill of his Valium prescription, and Dr. Toalson refilled that prescription. Tr. 18, 300. Plaintiff returned in June 2008 and reported that the Valium helped him to function and that his only issue regarding his post-traumatic stress disorder was nightmares that interrupted his sleep cycle. Tr. 351. Dr. Toalson continued Plaintiff on the Valium as he was doing well on it and he noted that Plaintiff was still receiving the majority of his healthcare through the VA Medical Center. Tr. 351. Dr. Toalson also refused to write a letter regarding Plaintiff's disability status because his care of Plaintiff was contained to treating his post-traumatic stress disorder with Valium. Tr. 351.

Plaintiff argues that Dr. Toalson's notations that he was responding well to Valium "says nothing about his ability to function mentally in a competitive work environment" and in support, he cites to two Eighth Circuit decisions and a Western District of Wisconsin decision. Plaintiff's Opening Brief, 16-17. In each of these cases, the court found that the administrative law judge erred by taking remarks that the claimant showed improvement out of context. Hutsell v. Massanari, 259 F.3d 707, 712-13 (8th Cir. 2001) ("Given that [the

12

claimant's] treating physician has not discharged her from treatment and requires her to see him frequently and that other doctors have concluded that [the claimant's] work skills are seriously deficient, 'doing well' as a chronic schizophrenic is not inconsistent with a finding of disability."); Gude v. Sullivan, 956 F.2d 791, 793 (8th Cir. 1992) ("While these statements by [the treating physician] are well supported by the record, we believe the [administrative law judge] took these statements out of context and ignored the thrust of [the treating physician's] report. The fact that [the claimant's symptoms are] 'in remission' and 'ha[ve] stabilized' does not mean that [the claimant's] symptoms have gone away or that they do not exist."); Hemminger v. Astrue, 590 F. Supp. 2d 1073, 1081 (W.D. Wis. 2008) ("[T]he record indicates that plaintiff's condition was stable largely because she had quit working and structured her activities at home to avoid exacerbating her symptoms."). In contrast to these cases, the above summary of Dr. Toalson's treatment notes shows that the administrative law judge was not taking Dr. Toalson's remarks out of context. Indeed, Dr. Toalson's treatment notes show that Plaintiff did respond well to Valium and he was stable on Valium. Thus, the administrative law judge acted appropriately in relying on Dr. Toalson's statements that Plaintiff was "doing well" to support his finding that Plaintiff was not disabled.

Plaintiff also argues that Dr. Toalson never offered an opinion regarding his ability to work and that nothing should be inferred from Dr. Toalson's silence. Plaintiff's Opening Brief, 17. However, nothing in the administrative law judge's opinion indicates that he credited Dr. Toalson with offering an opinion regarding Plaintiff's ability to work. Instead, his opinion indicates that he looked to Dr. Toalson's treatment notes to evaluate the nature

and severity of Plaintiff's psychological impairments. Tr. 24. Accordingly, the undersigned finds that the administrative law judge appropriately evaluated Dr. Toalson's opinion and that his decision to accord it great weight was supported by substantial evidence.

## 2. Examining Medical Sources

Plaintiff argues that the administrative law judge gave too much weight to the opinion of Dr. Gail Poyner, a consultative psychologist who examined Plaintiff on October 13, 2005, because she did not have all Plaintiff's medical records at the time she rendered her opinion. Plaintiff's Opening Brief, 17-18. Plaintiff also contends that the administrative law judge erred in evaluating the opinions of Dr. George Mount, a consultative psychologist who evaluated Plaintiff on July 30, 2007, and Dr. Melanie Talley, a consultative psychologist who evaluated Plaintiff on December 31, 2009. Plaintiff's Opening Brief, 18-19. Specifically, Plaintiff contends that the administrative law judge erred in failing to note the weight he gave to Dr. Talley's opinion. Plaintiff's Opening Brief, 18. Plaintiff further contends that the administrative law judge erred in failing to apply the factors set forth in 20 C.F.R. § 404.1527(d) in evaluating the opinions of Dr. Talley and Dr. Mount. Plaintiff's Opening Brief, 18-19. Finally, Plaintiff contends that the opinions of Dr. Talley and Dr. Mount were entitled to "significant weight" because both opinions were based on "detailed medically acceptable psychodiagnostic findings." Plaintiff's Opening Brief, 19.

The Commissioner responds that the administrative law judge properly evaluated the opinions of Dr. Talley and Dr. Mount and gave specific reasons for finding their opinions to be entitled to less weight. Commissioner's Response, 15-16. The Commissioner also argues

that the administrative law judge properly evaluated Dr. Poyner's opinion and gave it proper weight. Commissioner's Response, 19-20.

After a thorough review of the record, the undersigned finds that the administrative law judge's treatment of the opinions of Dr. Poyner, Dr. Talley, and Dr. Mount was not error. In reaching this conclusion, the undersigned has considered that while an administrative law judge is not required to discuss each item of evidence in the record, he may not rely solely on favorable evidence without giving reasons for discounting evidence upon which he chooses not to rely. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (administrative law judge must discuss uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects); Hamlin v. Barnhart, 365 F.3d 1208, 1217 (10th Cir. 2004) (stating that an administrative law judge must discuss uncontroverted evidence he chooses not to rely upon as well as significantly probative evidence he rejects); Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (it was error to accept some mental restrictions of the consultative mental health examiner while rejecting other of his findings without explanation); Frantz v. Astrue, 509 F.3d 1299, 1302-03 (10th Cir. 2007) (same, applying Haga to the opinions of non-examining physicians).

### a. Dr. Poyner's Opinion

Here, the administrative law judge gave "great weight" to the opinion of Dr. Poyner. Tr. 23. Dr. Poyner conducted her examination in October 2005 and noted that Plaintiff lived in a group house and was driven to the appointment by a friend. Tr. 23, 131. Dr. Poyner also noted that Plaintiff's grooming and hygiene were good and that his posture and motor

movements were appropriate and within normal limits. Tr. 23, 131. She described Plaintiff as having a pained and frightened expression with an anxious affect and depressed mood. Tr. 23, 131. She reported that he was alert and cooperative with good eye contact; that he was not alert to time but was oriented to person, place, and purpose; that he had some trouble with his memory; that his abstract reasoning was intact; and that he had good judgment. Tr. 23, 131. Dr. Poyner stated that Plaintiff's communication was logical, linear, and goal-oriented and that his thinking and behavior did not appear to be influenced by preoccupations, paranoia, thought-blocking, delusions, fear, or other impediments. Tr. 23, 132.

Plaintiff reported to Dr. Poyner that the VA diagnosed him with post-traumatic stress disorder but that he never received any inpatient treatment and only occasional outpatient treatment. Tr. 23, 132. Plaintiff claimed that he was sexually, physically, and mentally abused as a child and that in March 2005 he stopped working while stationed at Dulles International Airport because he felt overwhelmed and lost. Tr. 23, 132-33. Plaintiff reported that he experienced panic attacks, loss of sleep, and nightmares stemming from an incident in the Army when he was beaten and gang raped. Tr. 23, 133.

Dr. Poyner reported that while Plaintiff was focused and concentrated during the examination, he claimed that he could remember none of the three stimulus words after a short delay. Tr. 23, 133. She also reported that when asked the time, he reported it was morning when it was actually 3:15 in the afternoon and that this was inconsistent with his level of awareness and general presentation. Tr. 23, 133. She noted that Plaintiff's claim

that he only got two hours of sleep at a time did not coincide with his good grooming and hygiene, his alertness, and his appearance as not sleep deprived.  Tr. 23, 133.  Dr. Poyner stated that during the examination, Plaintiff was dramatic and histrionic when describing his history and symptoms but that while in the waiting room prior to and following the examination, he did not exhibit any fear or discomfort and displayed no negative reaction in answering seventy-five questions concerning his symptoms.  Tr. 23, 134.  Because of the disparity between Plaintiff's presentation and report, Dr. Poyner administered a structured inventory of malingered symptomatology test which is designed to detect malingering.  Tr. 23, 134.  Dr. Poyner reported that Plaintiff's score on this test "was significantly elevated above the recommended cutoff score for the identification of suspected malingering."  Tr. 23, 134.  Dr. Poyner also reported that Plaintiff "endorsed a high frequency of symptoms that are highly atypical in patients with genuine psychiatric or cognitive disorders" and that his "subjective vs. objective presentation further supports the possibility of malingering."  Tr. 23, 134.  Thus, she concluded that while Plaintiff may have experienced a traumatic event, he was exaggerating his symptoms and was not precluded from working.  Tr. 23, 134.

At the end of her report, Dr. Poyner noted that she was not supplied with any background materials, including any diagnosis of post-traumatic stress disorder, Tr. 134, and based on this, Plaintiff contends that the administrative law judge erred in giving "great weight" to Dr. Poyner's opinion.  While this incompleteness may have been a factor weighing against the administrative law judge's decision to give Dr. Poyner's opinion "great weight," it did not categorically forbid the administrative law judge from assigning her

opinion such weight. This is especially true here given that Dr. Poyner conducted a detailed evaluation of Plaintiff which included Plaintiff's statements regarding his history and symptoms, Dr. Poyner's observation of Plaintiff both inside and outside an examination setting, and administration of a test designed to detect malingering. Accordingly, the undersigned finds that the administrative law judge appropriately evaluated Dr. Poyner's opinion and that substantial evidence supports his decision to accord it "great weight."

### b. Dr. Talley's Opinion

In December 2008, well after the date Plaintiff was last insured, Dr. Talley examined Plaintiff to aid in determining his eligibility for social security insurance benefits.[4] In her report, Dr. Talley reported that Plaintiff was appropriately dressed and groomed with good hygiene, though he appeared not to have slept in days. Tr. 284. Dr. Talley further reported that when asked about the assault he sustained in the Army, Plaintiff became extremely distressed, tearful, and tense as if reliving the experience. Tr. 284. She noted that Plaintiff claimed that he left his last job after he had a panic attack and flashback at work which resulted in him being hospitalized. Tr. 284-85. She also noted that Plaintiff claimed he was attacked and gang raped while in the Army in 1971 and that his main problem was hypervigilence. Tr. 285. Dr. Talley reported that Plaintiff claimed to have recurrent recollections of the rape during the day and violent nightmares at night. Tr. 286. According to Dr. Talley, Plaintiff reported that he was unable to concentrate and only slept about six

---

[4]At that time, Dr. Talley was actually a postdoctoral resident, and the examination was conducted with D. Gant Ward, Ph.D., a psychologist.

hours a day, all of which were fragmented. Tr. 286. Dr. Talley found that Plaintiff suffered from post-traumatic stress disorder and likely suffered from repeated episodes of "reactive depression." Tr. 286. Dr. Talley also found that Plaintiff's basic attention and concentration were within normal limits but that he had difficulties with his working memory and had impairments with his episodic memory. Tr. 286-87. Thus, Dr. Talley found that Plaintiff likely could not return to work and assessed him with a GAF score of forty-nine. Tr. 287.

At the time of Plaintiff's examination, Dr. Talley also completed an impairment questionnaire in which she diagnosed Plaintiff with disabling post-traumatic stress disorder and listed his GAF score as forty. Tr. 288. Dr. Talley stated that the following clinical findings supported her diagnosis: poor memory, sleep disturbance, mood disturbance, emotional lability, one hallucination, recurrent panic attacks, anhedonia, psychomotor agitation, feelings of guilt/worthlessness, difficulty thinking or concentrating, time or place disorientation, social withdrawal or isolation, decreased energy, and intrusive recollections of traumatic behavior. Tr. 289. Dr. Talley also stated that Plaintiff's physical and physiological changes in discussing his trauma were "striking." Tr. 289. Dr. Talley listed Plaintiff's symptoms as hypervigilence, psychomotor restlessness, tearfulness, insomnia, anhedonia, anergia, and decreased appetite, all of which were consistent and became more severe when Plaintiff was exposed to triggers. Tr. 290.

Dr. Talley then rated Plaintiff's ability to remember locations and work-like procedures and his ability to understand and remember detailed instructions as markedly limited and rated his ability to understand and remember one or two step instructions as

mildly limited.  Tr. 291.  She rated his ability to carry out simple one or two step instructions and his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance as moderately limited.  Tr. 291.  She rated his ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to sustain ordinary routine without supervision, to work in coordination with or proximity to others without being distracted by them, to make simple work related decisions, to complete a normal workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods as markedly limited.  Tr. 291-92.  She found his ability to interact appropriately with the general public, to ask simple questions or request assistance, to accept instructions and respond appropriately to criticism from supervisors, and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes as markedly limited but that he had no limitations in his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.  Tr. 292.  She found he was moderately limited in his ability to respond appropriately to changes in the work setting but was markedly limited in his ability to be aware of normal hazards and take appropriate precautions, to travel to unfamiliar places or use public transportation, and to set realistic goals or make plans independently.  Tr. 293.  Dr. Talley also concluded that Plaintiff experienced episodes of decompensation at work, the most recent of which was his emotional breakdown which caused him to stop working.  Tr. 293.  Dr. Talley noted that Plaintiff's ability to concentrate and be consistently reliable at the work place was markedly limited.  Tr. 293.  Finally, Dr.

Talley reported that Plaintiff was incapable of handling "low stress," did not have any good days, and that his impairments would likely cause him to miss work more than three times a month. Tr. 294-95.

The administrative law judge noted that he considered Dr. Talley's opinion and that her opinion came a year and one half after the date Plaintiff was last insured. Tr. 25. The administrative law judge also noted Dr. Talley's opinion contained in her impairment questionnaire regarding Plaintiff's limitations and he discussed her findings that Plaintiff suffered from hypervigilence, post-traumatic stress disorder, and panic disorder with agoraphobia. Tr. 25. The administrative law judge then concluded that Dr. Talley's report was "not highly probative of [Plaintiff's] level of functioning at his date last insured" because the opinion was a one-time evaluation conducted well after the date Plaintiff was last insured and was inconsistent with the treatment notes of Dr. Toalson. Tr. 25.

Plaintiff claims that the administrative law judge failed to note the weight he gave Dr. Talley's opinion. However, the administrative law judge specifically noted that her opinion was "not highly probative of [Plaintiff's] level of functioning at his date last insured." Thus, while the administrative law judge does not expressly state that Dr. Talley's opinion was given little weight, the weight given to her decision is implicit in this statement.

Additionally, Plaintiff claims that the administrative law judge failed to apply the appropriate factors and that Dr. Talley's opinion should have been given substantial weight. These arguments must fail. As noted above, the administrative law judge specifically stated that Dr. Talley's opinion was not "highly probative" because it was a one-time evaluation,

was conducted well after the date Plaintiff was last insured, and was inconsistent with the treatment notes of Dr. Toalson. The administrative law judge acted properly in discounting Dr. Talley's opinion in favor of Dr. Toalson's because the Social Security regulations specifically state that the opinion of a treating physician who has seen the claimant over a period of time generally controls over the opinion of an examining physician who saw the claimant once. 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources . . . ."); Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician . . . ."). This is especially true here where Plaintiff's statements to Dr. Talley contradicted his statements to Dr. Toalson during the disability time period, March 28, 2005, to March 31, 2007, that Valium adequately treated his post-traumatic stress disorder and panic attacks. Tr. 166-69, 175, 177, 300, 351. Further, the administrative law judge was justified in according less weight to the opinion of Dr. Talley in favor of Dr. Toalson's opinion because in contrast to Dr. Talley's examination, Dr. Toalson's treatment notes document Plaintiff's condition during the disability time period. See Marshall v. Astrue, No. 07-4245, 290 Fed. Appx. 90, 92-93 (10th Cir. July 11, 2008) (upholding administrative law judge's decision to accord little weight to treating physicians' opinions because among other things, opinions were provided after date claimant was last insured). Accordingly, the undersigned finds that the administrative law judge appropriately considered Dr. Talley's opinion and that his decision to accord it less weight was supported by substantial evidence.

### c. Dr. Mount's Opinion

The administrative law judge also considered Dr. Mount's July 30, 2007, clinical interview and mental status examination. Tr. 25. Dr. Mount noted that Plaintiff reported nightmares and stated that he was taking Valium. Tr. 25, 213-14. Dr. Mount found Plaintiff to be cooperative and noted that Plaintiff did some cooking, helped with household chores, read the news online, remembered to take his medication, paid the bills, managed his funds, occasionally made visits outside his home, and drove only with someone else present in the car. Tr. 25, 213-14. Dr. Mount also described Plaintiff as well groomed, restless in his behavior, appropriate in speech, and relevant and coherent in conversation. Tr. 25, 214. Dr. Mount reported that Plaintiff's thought processes were goal-directed, that there was no indication of delusions or hallucinations, that Plaintiff was anxious and depressed with a labile mood, and that he was fully oriented and of average intellectual functioning. Tr. 25, 214. Dr. Mount found that Plaintiff's remote and immediate memory were intact but that his recent memory was not intact and that his judgment and reasoning were logical and functional with good insight. Tr. 25, 214. Dr. Mount noted that Plaintiff's prognosis was guarded and he found that his psychometric test results were consistent with diagnoses of post-traumatic stress disorder and severe depression. Tr. 25, 214. Accordingly, Dr. Mount diagnosed Plaintiff with post-traumatic stress disorder and major depressive disorder and assessed his GAF score at fifty. Tr. 25, 215.

The administrative law judge accorded Dr. Mount's opinion "less weight" than Dr. Toalson's because Dr. Mount was a one-time examining psychologist. Tr. 25. The Social

Security regulations, as stated above, state that an examining physician's opinion is generally subject to less weight than a treating physician's opinion, and Plaintiff has failed to set forth any reason for finding that Dr. Mount's opinion should have been given greater weight. Accordingly, the undersigned finds that the administrative law judge acted correctly in according Dr. Mount's opinion less weight and that substantial evidence supports his decision.

### 3. Non-Examining Medical Sources

Plaintiff argues that the administrative law judge erred in not crediting the opinion of Dr. Thomas Lynn, the medical expert who testified at the administrative hearing, that Plaintiff met Listing § 12.06. Plaintiff's Opening Brief, 15. Plaintiff also argues that the administrative law judge erred in according too much weight to the opinions of the state agency psychologists. Plaintiff's Opening Brief, 17-18; Plaintiff's Reply, 2.

The Social Security regulations require the administrative law judge to consider the opinions of non-examining medical sources and evaluate those opinions according to the relevant factors used to evaluate other medical opinions. 20 C.F.R. § 404.1527(f)(2)(i)-(ii). Here the administrative law judge considered the opinion of Dr. Lynn. Tr. 24. Dr. Lynn testified that the medical evidence showed Plaintiff had the following conditions: late onset dysthymia, post-traumatic stress disorder with panic attacks, multi-joint pain of undetermined etiology, neck pain due to degenerative disc disease and osteoarthritis of the cervical spine, hypertension, a history of renal and ureteral stones, and mild hearing loss. Tr. 24, 399. Dr. Lynn then testified that in his opinion Plaintiff's physical conditions did not meet the severity

of any listing of impairments. Tr. 24, 400. He noted Dr. Pointer's report where she questioned whether Plaintiff was exaggerating his symptoms and Dr. Lynn expressed doubt about Plaintiff's claims that he had been raped and beaten in the Army, that he had been attacked by another veteran at the VA Medical Center, and that his ex-wife had been raped by a business partner. Tr. 24, 400. After expressing his doubt about some of the Plaintiff's claims, Dr. Lynn then stated that "having said all that," the examination reports of Dr. Mount and Dr. Talley would support Plaintiff's mental impairments equaling the severity of Listing § 12.06. Tr. 24, 400. However, he added "I find this an unusual record." Tr.400.

The administrative law judge accurately described Dr. Lynn's testimony as "couched diplomatically" and stated that he expressed his opinion after noting his doubts regarding the information Plaintiff supplied to Dr. Mount and Dr. Talley. Tr. 24. Thus, the administrative law judge found that Dr. Lynn's opinion that Plaintiff's condition equaled Listing 12.06 was qualified and he did not give it great weight. Tr. 24. The administrative law judge also found that Dr. Lynn's opinion was inconsistent with Dr. Toalson's treatment notes and thus not subject to great weight. The administrative law judge adequately explained his reason for according Dr. Lynn's opinion less weight and his decision was supported by Dr. Lynn's testimony. Dr. Lynn was in essence stating that if one accepted the reports of Dr. Mount and Dr. Talley, Plaintiff's condition equaled Listing 12.06. But, as explained, the administrative law judge did not fully accept the reports of Dr. Mount and Dr. Talley. Accordingly, the undersigned finds that the administrative law judge appropriately evaluated Dr. Lynn's opinion and substantial evidence supports his decision to accord it less weight.

The administrative law judge also considered the opinions of the state agency psychologists. Tr. 24-25. These psychologists reported that Plaintiff retained the capacity to perform simple tasks with routine supervision and could relate to supervisors and peers on a superficial work basis but could not relate well to the general public. Tr. 24-25, 151-53, 165.[5] The state agency psychologists also found that Plaintiff was markedly limited in his ability to understand, remember, and carry out detailed instructions but not significantly limited in any other area. Tr. 25, 151-52, 165. The administrative law judge determined that these opinions were subject to "great weight" because they were "well supported by medically acceptable clinical findings and psychological testing" and were consistent with the entire record. Tr. 25. Plaintiff argues that these opinions should have been accorded diminished weight because the state agency psychologists relied on the opinion of Dr. Poyner in reaching their opinions and Dr. Poyner's opinion was based on insufficient evidence. Plaintiff's Opening Brief, 17-18. The undersigned has already determined that the administrative law judge's decision to rely on Dr. Poyner's opinion was supported by substantial evidence and nothing indicates that the administrative law judge acted inappropriately in according the state agency psychologists' opinions "great weight."

---

[5]In discussing the state agency psychologists' opinions, the administrative law judge cited to the psychiatric review technique form at Tr. 137-50. Tr. 25. However, this report does not support the administrative law judge's claims, and a review of the record shows that the administrative law judge was actually relying on the first state agency psychologist's mental residual functional capacity assessment form at Tr. 151-54 and the second psychologist affirming the assessment at Tr. 165.

According, the undersigned finds that the administrative law judge's decision to accord "great weight" to those opinions is supported by substantial evidence.

### C.  VA DISABILITY RATING

Plaintiff argues that the administrative law judge failed to sufficiently explain his decision to reject the disability finding of the VA.  Plaintiff's Opening Brief, 19-21.  The Commissioner responds that the administrative law judge properly considered and evaluated the disability finding of the VA.  Commissioner's Response, 20-23.

"Although another agency's determination of disability is not binding on the Social Security Administration, [20 C.F.R. § 404.1504,] it is evidence that the [administrative law judge] must consider and explain why he did not find it persuasive."  Grogan v. Barnhart, 399 F.3d 1257, 1262-1263 (10th Cir. 2005) (citing Baca v. Department of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993) ("Although findings by other agencies are not binding on the [Commissioner], they are entitled to weight and must be considered." (internal quotation marks omitted))); 20 C.F.R. § 404.1512(b)(5) (defining the disability determinations of other agencies as evidence to be considered by the Social Security Administration); see also Hamlin v. Barnhart, 365 F.3d 1208, 1219 (10th Cir. 2004) (same).

Here, the administrative law judge noted that the VA awarded Plaintiff 100% service connected disability in April 2008 with an effective date of May 8, 2007, based on his post-traumatic stress disorder.  Tr. 22.  Later, the administrative law judge stated that he had considered the decision of the VA.  Tr. 25.  He noted that the decision of the VA referenced some psychiatric and third party reports not included in the record and stated that evidence

of substandard behavior and functioning may have been available to the VA but that evidence did not appear in the administrative record here. Tr. 25. The administrative law judge then stated that he was not bound by the decision of the VA and after his review of all of the evidence, he concluded that the VA decision was of "little probative value" in determining whether Plaintiff was disabled for Social Security benefits purposes. Tr. 25-26.

The VA increased Plaintiff's service connected disability to 100% effective May, 8, 2007, which is a few months after the date Plaintiff was last insured. Tr. 367-368. In reaching this decision, the VA relied on statements from Billy J. Myers, Patricia J. Myers, Joy Metts, Dr. Gary Pettenger, and Shelby H. Walsh, which according to the VA stated that they had witnessed Plaintiff's anxiety attacks, sleep disturbance, short-term memory difficulties, and difficulties in social situations. Tr. 368. These reports are not in the record. The VA also relied on the examination report of Dr. Mount, which as stated above the administrative law judge properly found was subject to less weight. Tr. 368. The VA cited to an examination report it conducted of Plaintiff on May 8, 2007, which indicated that Plaintiff had difficulty establishing and maintaining effective work/school and social relationships, thus interfering with his ability to maintain employment. Tr. 368-69. Again, this report was not in the record. Further, this report directly conflicted with the administrative law judge's well-supported finding that Plaintiff could "interact for work purposes." Tr. 21.

Plaintiff argues that the administrative law judge should have obtained the examination report that the VA Medical Center conducted pursuant to the administrative law

judge's duty to develop the record.  Plaintiff's Opening Brief, 21.  An administrative law judge "has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing."  Maes v. Astrue, 522 F.3d 1093, 1096 (10th Cir. 2008) (quoting Branum v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004)).  The record indicates that the administrative law judge issued a subpoena to the VA to obtain a copy of the examination report.  Tr. 273-77.  However, the VA indicated that it did not have a copy of the requested report, and Plaintiff indicated in a letter to the administrative law judge that the doctor who performed the evaluation had destroyed his copy of the report.  Tr. 278, 279-80.  While Plaintiff indicated that a copy of the doctor's letter might be available at a regional VA office in Muskogee, Plaintiff also gave the administrative law judge the option of using Dr. Mount's report in lieu of the VA examination report, and as stated above, the administrative law judge did consider that report.  Tr. 280.  It would be incredulous to require the administrative law judge to obtain documents which have since been lost or destroyed, and the record shows that the administrative law judge fulfilled his duty to develop the record.  Accordingly, the undersigned finds that the administrative law judge adequately considered the disability determination of the VA and that substantial evidence supports his decision to find that determination was of "little probative value."

### D.  CREDIBILITY DETERMINATION

Plaintiff argues that the administrative law judge failed to adequately analyze his credibility by failing to offer a proper reason for finding Plaintiff less credible.  Plaintiff's

Opening Brief, 21-23. The Commissioner responds that the administrative law judge properly applied the appropriate factors and that substantial evidence supports his decision to find Plaintiff less credible. Commissioner's Response, 23-26.

The standard for evaluating the effects of symptoms on a claimant's ability to work is well established. The administrative law judge must consider (1) whether the claimant has established the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms, (2) if so, whether there is at least a "loose nexus" between the impairment and the claimant's subjective allegations, and (3) if so, whether, considering all of the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. Luna v. Bowen, 834 F.2d 161, 163-65 (10th Cir. 1987).

When the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the claimant's ability to do basic work activities. Social Security Ruling, 96-7p, 1996 WL 374186, at *1. Some factors that may be considered in assessing the credibility of a claimant's statements about the effects of symptoms include (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant receives or has received for relief of pain or other symptoms; (5) treatment, other than medication, the

claimant has received for relief of pain or other symptoms; and (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms.  20 C.F.R. § 404.1529(c)(3); see also Luna, 834 F.2d at 165-66; Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir. 1988) (listing other relevant factors including "frequency of medical contacts, . . . subjective measures of credibility that are peculiarly within the judgment of the [administrative law judge], the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.").

Credibility determinations are peculiarly within the province of the finder of fact and should not be upset when they are supported by substantial evidence.  Diaz v. Secretary of Health & Human Services, 898 F.2d 774, 777 (10th Cir. 1990).  Indeed, the administrative law judge has an "institutional advantage" in making credibility determinations.  "Not only does an [administrative law judge] see far more social security cases than do appellate judges, he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion."  White v. Barnhart, 287 F.3d 903, 910 (10th Cir. 2001).  However, an administrative law judge must closely and affirmatively link his credibility findings to substantial evidence as a conclusory finding is insufficient.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  But a "formalistic factor-by-factor recitation of the evidence" is not required.  Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  An administrative law judge's credibility analysis is sufficient so long as the decision sets forth the specific evidence relied upon in making the determination.  Qualls, 206 F.3d at 1372.

Here, the administrative law judge set forth the test for evaluating Plaintiff's symptoms and noted that Plaintiff complained that he was disabled due to his alleged post-traumatic stress disorder.[6]  Tr. 21-22.  The administrative law judge found that while Plaintiff's post-traumatic stress disorder could reasonably be expected to produce some of the alleged symptoms, Plaintiff's statements regarding their intensity, persistence, and limiting effects were not credible to the extent they were inconsistent with the RFC determination. Tr. 22.  The administrative law judge then explained that Plaintiff's credibility was diminished because he repeatedly declined offers of individual therapy available to him under his VA benefits and such behavior was inconsistent with his claims of debilitating post-traumatic stress disorder, anxiety, and depression.  Tr. 22.  The administrative law judge also noted that Plaintiff worked with his mental impairments and that there was no indication of repeated intrusive episodes that interfered with his functionality, though he was required to stop work in March 2005 due to an episode.  Tr. 22.  Further, the administrative law judge noted that the record did not indicate any exacerbation or increasing severity or frequency of Plaintiff's symptoms but that instead Plaintiff reported that he was doing well while on Valium.  Tr. 22.  The administrative law judge also found that Plaintiff overstated his physical problems and he cited evidence to support that conclusion.  Tr. 22.

---

[6]Plaintiff also alleged the existence of physical problems which the administrative law judge found were overstated.  Tr. 21-22.  However, the undersigned has not discussed the administrative law judge's findings regarding these symptoms because Plaintiff has not challenged those findings.

Plaintiff argues that the administrative law judge erred in crediting his statements that he was doing well on Valium because such statements are irrelevant to his baseline limitations. Plaintiff's Opening Brief, 22. Plaintiff essentially raised this same argument above in reference to Dr. Toalson's opinion, and for the reasons stated above, the undersigned determines that the administrative law judge acted appropriately in using these statements as evidence of Plaintiff's diminished credibility.

Additionally, Plaintiff argues that the administrative law judge erred in relying on Plaintiff's failure to seek treatment through the VA Medical Center because psychologically disabled people often do not seek treatment, and in support of this argument, Plaintiff cites to Pate-Fires v. Astrue, 564 F.3d 935 (8th Cir. 2009). Plaintiff's Opening Brief, 22-23. Plaintiff's case is distinguishable. In Pate-Fires, the court stated that "a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of the mental impairment itself and, therefore, neither willful nor without a justifiable excuse." Pate-Fires, 564 F.3d at 945 (internal quotation marks and brackets omitted). However, the issue in Pate-Fires was whether the claimant's failure to follow the prescribed treatment was a result of her psychological disorders, making her failure to follow that treatment not indicative of her credibility, and the court found that it was. Pate-Fires, 564 F.3d at 946. In contrast, the record shows that Plaintiff did follow his prescribed treatment of taking Valium every day. Instead, the issue here is whether his failure to seek additional treatment reflected adversely his credibility regarding the limiting effects of his psychological impairments. The administrative law judge found that it did, and Plaintiff's argument to the contrary is not

persuasive.  See Bolton v. Barnhart, No. 04-5014, 117 Fed. Appx. 80, 85-87 (10th Cir. Nov. 24, 2004) (upholding administrative law judge's finding that claimant was not credible because, among other things, claimant refused offers of hospitalization and was noncompliant with his medication and other treatment).  Accordingly, the undersigned finds that the administrative law judge properly evaluated Plaintiff's credibility and substantial evidence supports his determination that Plaintiff was not credible regarding the limiting effects of his impairments.

### E.  VOCATIONAL EXPERT TESTIMONY

Plaintiff claims that the administrative law judge erred in relying on the testimony of the vocational expert from the first administrative hearing rather than having the vocational expert testify again at the second administrative hearing because the limitations found on remand differ from those found at the first administrative hearing.  Plaintiff's Opening Brief, 24-25.  The Commissioner responds that the question to the vocational expert at the first administrative hearing included the limitations that the administrative law judge found in the second decision and thus additional testimony was not needed.  Commissioner's Response, 26-28.  Plaintiff replies that it was unclear what limitations the administrative law judge meant to express in the hypothetical at the first administrative hearing and this rendered the vocational expert's testimony at the first administrative hearing unreliable.  Plaintiff's Reply, 3-4.

It is well-established that an administrative law judge's hypothetical question to a vocational expert "must include all (and only) those impairments borne out by the evidentiary

record." Evans v. Chater, 55 F. 3d 530, 532 (10th Cir.1995). Hypothetical questions should

be crafted carefully to reflect a claimant's residual functional capacity, because "[t]estimony

elicited by hypothetical questions that do not relate with precision all of a claimant's

impairments cannot constitute substantial evidence to support the [Commissioner's]

decision." Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir.1991).

At the first administrative hearing, the administrative law judge posed the following

hypothetical to the vocational expert:

> Let me give you a hypothetical based on the mental RFC that the state did. .
> . . They said there were marked limitations on the ability to understand and
> remember detailed instructions and carry out detailed instructions and on the
> ability to interact appropriately with the general public. If those were the
> limitations from a mental RFC and they're not found to be correct, that the
> person could do simple tasks with routine supervision and relate for work
> purposes otherwise, what effect would it have on this past work history for this
> claimant that we have here, assuming it's the same as [Plaintiff's]?

Tr. 432. The fundamental confusion regarding this hypothetical stems from the word "not"

in the clause "[i]f those were the limitations from a mental RFC and they're not found to be

correct." However, the insertion of this word seems to be merely a scrivener's error as it is

clear from what comes before this clause that the administrative law judge meant to

incorporate the RFC assessment of the state agency psychologists, who, as stated above,

found that Plaintiff was markedly limited in his ability to understand, remember, and carry

out detailed instructions and interact appropriately with the general public but could perform

simple tasks with routine supervision and relate for work purposes. Tr. 151-54, 432. In

making his RFC finding here, the administrative law judge also accepted the RFC assessment

of the state agency psychologists.  Tr. 25.  And the administrative law judge's RFC determination here that Plaintiff could "understand, remember and carry out simple instructions; work with routine supervision and interact for work purposes, but should not be required to deal with the general public" comports with the hypothetical quoted above. Tr. 21.

Plaintiff claims that a marked limitation in dealing with the public is incompatible with a finding that Plaintiff could relate for work purposes.  Reply, 3.  Plaintiff does not point to any authority to support his argument.  Further, the vocational expert specifically testified that jobs existed in significant numbers in the national economy given Plaintiff's RFC, which included both his limitation on interacting with the public and his ability to relate for work purposes.  Tr. 433-34.  Accordingly, the undersigned finds that the limitations placed on Plaintiff both initially and on remand were identical and were accurately reflected in the hypothetical posed at the first administrative hearing.  Thus, the administrative law judge here acted appropriately in using the vocational expert's testimony from the prior administrative hearing.

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed.  The parties are advised of their right to object to this Report and Recommendation by December 7th, 2010,  in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72.  The parties are further advised that failure to make timely objection to this Report

and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 17th day of November, 2010.

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE